John I. Haynes, Assignee of John I. Haynes and George D. Barnett, Jr., Appellant, v. East St. Louis Council No. 592, Knights of Columbus, Appellee.

Heard in this court at the February term, 1930. Opinion filed May 21, 1930.

SENECA C. TAYLOR and P. K. JOHNSON, for appellant.

McGLYNN & McGLYNN, for appellee.

MR. JUSTICE NEWHALL delivered the opinion of the court.

This was a suit by John I. Haynes, as assignee of John I. Haynes and George D. Barnett, Jr., a copart-

nership doing business under the firm name of Barnett, Haynes and Barnett, architects and engineers, against appellee to recover a balance of $1,500 due for services under a written contract executed between the parties.

The amended declaration charges that at and prior to July 23, 1924, appellant and the said Barnett were copartners in the practice of architecture in the City of St. Louis, Missouri, under the above-mentioned firm name; that appellant was the holder of a certificate of registration as a registered architect by the Department of Registration and Education of the State of Illinois; that the written contract was entered into between said copartners and appellee, which contract is set out *in haec verba* in the declaration.

The substance of the contract is that said architects, in consideration of the payments provided to be made to them by the owner (appellee), agreed to prepare preliminary plans for the acceptance and after acceptance to prepare complete plans, specifications and drawings in a skilful and businesslike manner for a club building to be erected in East St. Louis by appellee as owner. The contract provided that the owner agreed to pay said architects for the strict performance of said agreement a commission of $3\frac{1}{2}$ per cent, based on a total estimated cost of the building of $300,000, payable in instalments; the contract provided that the actual cost of the building, when completed, should include all work and material necessary to render the same fit for occupancy, except furniture and furnishings. There was a provision that the architect was to decide any disputes between the owner and contractor as to the construction of drawings and specifications, without extra charge therefor.

The declaration avers that pursuant to this contract the copartners prepared preliminary plans which were accepted, and thereafter prepared complete plans, specifications and drawings which were delivered to

and accepted by the owner; that the owner used said plans and erected its building according to the same, with such changes as the owner caused to be made.

The declaration further avers that appellant, being a registered architect under the laws of the State of Illinois, as therein above set forth, had supervision of the preparation of said plans, specifications and drawings and gave his knowledge, skill and attention thereto, and fully approved said plans, specifications and details before the same were delivered to appellee. The breach charged in the declaration is that after said copartnership completed the work and duties required of them by said contract and after the day arose for appellee to make payment of $10,500, being the sum equal to $3\frac{1}{2}$ per cent of $300,000, the defendant paid only a part thereof and that the amount of $1,500 of the account remained due and unpaid and that appellee refused to pay the same.

The declaration charged that appellant was the assignee and the equitable and bona fide owner of the account due and payable under said contract and that he acquired title thereto by written assignment from the other copartners on May 17, 1926.

A general and special demurrer was filed to the amended declaration which was sustained by the court and after appellant elected to stand upon the amended declaration, final judgment for dismissal of the suit and for costs was entered against appellant.

The sole question presented on this appeal is whether or not under the averments of the amended declaration appellant is barred from a recovery in this case because his copartner, George D. Barnett, Jr., was not a registered architect in the State of Illinois.

The declaration contains apt averments showing that appellant is the assignee of and the equitable and bona fide owner of the balance due under a written contract made between the original parties. It is conceded by appellant that if the copartnership firm could

not have recovered under the original contract by reason of the failure of one of the copartners not having an architect's license, that appellant cannot recover in this suit.

Section 1 of chapter 10½ of the Revised Statutes in force July 1, 1919, Cahill's St. ch. 10a, ¶ 1, provides that it shall be unlawful for any persons to practice architecture without a certificate of registration as a registered architect duly issued by the Department of Registration and Education under said act.

Section 2 defines what shall constitute the practice of architecture and, in substance, provides that the planning or supervision of the erection, enlargement or alteration of any building or buildings or any part thereof, to be constructed for others, constitutes the practice of architecture.

Section 3 of the act provides that no corporation shall be licensed to practice architecture, but it shall be lawful for a stock company or a corporation to prepare drawings, plans and specifications for buildings which are erected or their construction supervised by such stock company or corporation, provided the chief executive officer or managing agent of such stock company or corporation shall be a registered architect, and provided further that the supervision of such building and construction shall be under the personal supervision of said registered architect, and that such drawings shall be prepared under the personal direction and supervision of such registered architect and bear the stamp of his official seal. This section also provides that registered architects may enter into a partnership with licensed structural engineers. There are no further provisions in the act in relation to the licensing of a copartnership as such.

Appellant contends that the trial court erred in sustaining the demurrer to the amended declaration and that under the authority of *People v. Rodgers Co.*, 277 Ill. 151, appellant is entitled to recover the balance due

from appellee for architectural services notwithstanding the fact that one of appellant's copartners was not a licensed architect.

In the *Rodgers* case, *supra,* it was held under the former statute of 1916 that a corporation which had contracted to perform all the usual and necessary architectural services for the building of a church was not violating the statute where it furnished the owner with plans and specifications which were all prepared by and under the direction of a regularly licensed architect.

Section 3 of the statute regulating the licensing of architects provides that it shall be lawful for a stock company or a corporation to prepare drawings, plans, etc., for the construction of buildings providing the chief executive officer or managing agent of such stock company or corporation shall be a registered architect and the supervision of the drawings, plans, etc., and the building constructed pursuant thereto shall be under the direction of a licensed architect.

The Supreme Court in the *Rodgers* case said in reference to the above provisions, as follows: "By the use in said section of the words, 'but the same may employ licensed architects,' the legislature clearly intended that corporations might contract for the doing of architectural work, provided the same be done by a regularly licensed architect or under the supervision of a regularly licensed architect. The use of those words was not necessary to authorize a corporation to employ architects to do architectural work on any structure being erected for the corporation, as it clearly had that right without the use of such words. Making contracts for services to be performed by an architect and collecting the compensation therefor is not practicing architecture within the meaning of the statute. This clearly appears from section 9 of said act, which reads: 'Any person who shall be engaged in the planning or supervision of the erection, enlargement or

alteration of buildings for others and to be constructed by other persons than himself shall be regarded as an architect within the provisions of this act, and shall be held to comply with the same; but nothing contained in this act shall prevent draughtsmen, students, clerks of works or superintendents, and other employees of those lawfully practicing as architects, under license as herein provided for, from acting under the instruction, control or supervision of their employers; or shall prevent the employment of superintendents of buildings paid by the owners from acting, if under the control and direction of a licensed architect who has prepared the drawings and specifications for the building.' . . .

"Any natural person, licensed or unlicensed, may make a contract to furnish architectural work to be performed by a licensed architect, and by section 9 of said act any draughtsman, student or other employee may do architectural work under the direction of a licensed architect. The object of this statute was not to protect architects merely by limiting the work to those that possessed a license. The real purpose of the statute is the protection of the public against incompetent architects, from whose services damage might result to the public by reason of dangerous and improperly constructed buildings and by badly ventilated and poorly lighted buildings."

In *Keenan v. Tuma,* 240 Ill. App. 448, it was held that where one, who was employed "architecturally" to make alterations upon a building, the work to include the making of plans, drawings and specifications, the letting of contracts and the supervising of construction, personally attended to all of such undertaking except the preparation of the plans, etc., which were done under his supervision by a licensed architect in his employ, such a person undertook and engaged in the practice of architecture in violation of the statute.

In the *Keenan* case the court found that the proof showed that practically all of the services that the plaintiff contracted to render pertained to the practice of architecture and that plaintiff himself inspected the work from time to time, as it progressed and checked the work according to the plans and specifications, and supervised "the erection, enlargement or alteration" of all that was contracted for.

The court further held, in view of this proof, that the acts of the plaintiff in that case constituted a violation of the statute and that it necessarily followed that such services could not become a valid consideration for the promise of the owner to pay therefor and denied a recovery to the plaintiff. It was further said in the *Keenan* case by the court that "Although section 3 of the act, as interpreted by the court in *People ex rel. State Board Examiners of Architects v. Rodgers Co.*, 277 Ill. 151, provides that a corporation may contract for doing architectural work, if the work is to be done by a regular licensed architect, and there is no express provision in the act that a private person may do likewise, we think it must be assumed that the legislature did not intend to give a corporation greater contractual rights than an individual, and so deprive the latter of the right of employing licensed architects."

In the case at bar the declaration avers that the plaintiff, being a registered architect under the laws of the State of Illinois, had supervision of the preparation of all said plans, specifications and details, and gave his knowledge, skill and attention thereto, and fully approved said plans, specifications and details before the same were delivered to the defendant.

In *Greenberg v. Reinken*, 197 Ill. App. 318, the court had under consideration the right of a copartnership to recover for plumbers' services where one of the members of the plumbing partnership was not licensed in accordance with the act providing for the licensing

of plumbers and for inspection of plumbing, Cahill's St. ch. 24, ¶ 670. In this case it appears that one Greenberg and Levinson were in business as partners in the plumbing business; that the work in question had been performed under an agreement between them and the owner, for which they had been paid in part and on failure to pay the balance suit was instituted in the name of the copartners to enforce mechanic's lien. The court in that case said:

"It appears from the evidence that in the conduct of complainants' business Greenberg had exclusive charge of supervising the plumbing work, making sketches for the installation and laying out the job, and had charge of the practical part of the work; that Levinson was not a plumber and never did any plumbing work and was not familiar with it and had no charge or supervision over it; that his duties were mainly connected with office work and bookkeeping, tending to the payment of bills with supply houses, keeping the payroll book with the names of employees, and tending to the distribution of their pay envelopes; that he also did the collecting; that he had nothing to do with the actual plumbing work done by the firm, either in planning or construction.

"We do not find a decision in any case in this State directly in point. In *Schnaier v. Navarre Hotel Co.*, 182 N. Y. 83, the Court of Appeals had under consideration a case involving facts almost identical with those now before us, with the additional fact that under the New York statute it was provided that 'each and every member of the firm shall have been registered.' In that case, as here, only one of two members of the firm was registered and he attended to the plumbing work. The other member was the financial man, who was not registered. The majority of the court held that this provision of the statute was invalid, saying: 'It prohibits a business man, with financial means and business ability, and a registered master plumber, with

the requisite mechanical skill, from uniting the financial and business ability of the one with the energy and mechanical skill of the other in a partnership for conducting a legitimate business. The right to form partnerships for the conduct of business has existed from time immemorial and any interference with that right must be regarded as an unwarranted interference with individual freedom condemned by the Constitution. The feature of the statute to which I have referred would deprive a firm engaged in the plumbing business, composed of half a dozen persons, from enforcing contracts and collecting their bills for work done unless they could show that each and every member of the firm was a registered plumber, and if, as in this case, it was impossible for one of them to become registered, the firm must dissolve. A law that produces such results in its operation cannot be valid.''

Counsel for appellee contends that under the strict wording of the contract appellee had a right to call upon either or both members of the copartnership for his services as an architect, and under such a contract calling for the practice of architecture, by one who was not licensed, that the contract is therefore void and cannot be enforced.

The contract in question purported to be between appellant and George D. Barnett, Jr., in business as architects and engineers under the firm name of Barnett, Haynes and Barnett, architects and engineers, as parties of the first part, and was signed with the firm name by appellant and by appellee as party of the second part; the parties of the first part in the contract being referred to as architects and the second party as owner.

The contract executed by appellant on behalf of the firm did not specifically call for architectural services to be performed by each and every member of the firm, and, in the absence of such special requirement, any

member of the firm who was lawfully licensed had the right to perform the architectural services mentioned in the contract.

Section 3 of the statute in question, Cahill's St. ch. 10a, ¶ 3, authorizes stock companies or corporations to prepare plans, specifications, etc., providing the chief executive officer or managing agent is a regularly licensed architect. A stock company is merely a co-partnership and is governed by the same rules as ordinary commercial partnerships. *People v. Rose,* 219 Ill. 46, 60.

It was said in the *Keenan* case, *supra,* "We think it must be assumed that the legislature did not intend to give a corporation greater contractual rights than an individual and so deprive the latter of the right of employing licensed architects," and likewise it is clear that the legislature did not intend to give "stock companies" greater or different rights and privileges than ordinary partnership.

If, as held in the *Rodgers* case, *supra,* the making of a contract for services to be performed by an architect and collecting the compensation therefor is not practicing architecture within the meaning of the statute, then it is evident that the mere making of the contract in question did not constitute a violation of the statute and the contract is not void.

We think the court erred in sustaining the demurrer to the declaration and the judgment of the trial court is reversed and the cause remanded with directions to overrule appellee's general and special demurrer.

*Reversed and remanded with directions.*